IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BASSAM MOHAMED NAGEM,              §
                                  §
          Plaintiff,              §
                                  §
VS.                               §   NO. 4:06-CV-855-A
                                  §
UNITED STATES OF AMERICA,         §
ET AL.,                           §
                                  §
          Defendants.             §

MEMORANDUM OPINION
and
ORDER

The above-captioned action was filed on December 6, 2006, by plaintiff, Bassam Mohamed Nagem, ("Nagem"), who is an applicant for naturalization.  Nagem asks the court to make a judicial determination of his naturalization application pursuant to the authority of 8 U.S.C. § 1447(b).  The defendants are United States of America; Alberto Gonzalez, Attorney General; Michael Chertoff, Secretary of Homeland Security ("Chertoff"); Emilio Gonzalez, Director, Citizenship and Immigration Services ("CIS"); Angela K. Barrows, District Director, CIS ("Barrows"); and Robert S. Mueller, III, Director, Federal Bureau of Investigation ("Mueller").

Each individual defendant is sued in his or her official capacity.  The government admits that Chertoff, Emilio Gonzalez, and Barrows are responsible for the grant or denial of naturalization applications filed within the Dallas district of CIS pursuant to 8 U.S.C. §§ 1421 and 1427 and 8 C.F.R. §§ 103.1(g)(2)(ii), 310.2, and 316.3, and that Mueller is

responsible for completion of security checks, the delay of which the other defendants have provided as a reason for the delay in the adjudication of Nagem's naturalization application.

The government has moved to remand the action to CIS for further processing of Nagem's application.  The court has concluded that the motion to remand should be denied, and that a hearing should be conducted on approval of Nagem's application after the government has provided any additional information the court needs to rule on the application.

I.

Nagem's Complaint

Nagem alleges, and the government admits, that:  In September 2004 Nagem filed his application for naturalization with CIS.[1]  Officers of defendants interviewed Nagem on his application in early April 2005.[2]  Nagem passed the tests of English and U.S. history and government.  He was notified that a decision could not yet be made on his application.  The form CIS used for the purpose of notifying Nagem of the results of his April 2005 interview gave him the following advice:

> Please be advised that under section 336 of the
> Immigration and Nationality Act, you have the right to
> request a hearing . . . before the U.S. district court
> if USCIS has not made a determination on your

_____

[1]Attachments to Nagem's complaint establish that his application is being processed by the Dallas district office of CIS.

[2]Nagem alleges that his interview was April 3, 2005, and defendants answer that it was on April 5, 2005.

2

application within 120 days of the date of your
examination.

Compl., Ex. B, last page.[3]  More than 120 days have passed since
the interview, and defendants still have made no decision on
Nagem's application.  According to the most recent processing
guidelines published by defendants for the Dallas district office
of CIS, which were released on November 17, 2006, the Dallas
office is currently processing naturalization cases with a
receipt of notice date of April 14, 2006--which means that
applications received over one-and-a-half years after plaintiff's
are being processed.

Further allegations by Nagem are that:  His inquiries of CIS
about his application have elicited the response that the
investigation into his background remains open.  He is eligible
for United States citizenship, having been a lawful permanent
resident of the United States for over five years, and having
resided in the United States since becoming a lawful permanent
resident.  As the results of the interview reflect, he has met
the requirements as to understanding the English language,
history, principles, and form of government of the United States.
He is a person of good moral character, based on the standard of
the average citizen in the community, and has been a person of
good moral character during the entire period required by 8

---

[3]The court is assuming that the April 2005 interview was an
"examination" within the meaning of section 336(b) of the Immigration
and Nationality Act, 8 U.S.C. § 1447(b).  The parties seem to be in
agreement that it was.  <u>See</u> Br. in Supp. of Defs.' Mot. to Remand at
13; Pl.'s Br. in Reply to Defs.' Mot. to Remand at 3.

U.S.C. § 1427.  In response to an inquiry made by Congressman Joe Barton on behalf of Nagem concerning the status of his application, Barrow responded on September 19, 2006, with, among others, the following explanation:

> A check of our records establishes that the application is not yet ready for decision, as the investigation into the background remains open.  Until the background investigation is completed, we cannot move forward on the case.
>
>            . . . .
>
> Given the number of applications submitted and the significance of immigration benefits, it is inevitable that some applications will require more attention than others.  USCIS relies primarily on three background check mechanisms:  the Interagency Border Inspection System (IBIS) name check, the FBI fingerprint check, and the FBI name check (see attachment).  For the vast majority of applicants, these mechanisms allow USCIS to quickly determine whether there are any criminal or security related eligibility issues.  In the remaining cases, often referred to as "pending," a match of some kind has been identified and must be resolved before any decision can be made on the petition or application.  USCIS does not share with applicants or their representatives information regarding the specific nature of the match or the nature or status of any investigation.
>
> These background checks allow USCIS to ensure public safety by screening out individuals improperly seeking immigration benefits, and have in the past uncovered applicants convicted of rape and child molestation, applicants involved in drug trafficking, and even applicants with known links to terrorism.  Even when the issues are ultimately resolved in the applicant's favor--and the vast majority are--such investigations require time, resources, and patience.

Compl., Ex. C, third page.  With respect to the FBI name check procedure, Barrow went on to explain:

> FBI name checks are also initiated for many applications.  Multiple FBI databases are searched to determine whether an individual has been encountered by the FBI in connection with an investigation of

criminal, security, or other activities that might
render him or her ineligible for benefits.  Initial
responses to this check generally take about two weeks.
In approximately 80% of the cases, no match is found.
In the remaining 20 percent, most are resolved within 6
months.  Less than one per cent of the cases subject to
an FBI name check remain pending longer than six
months.  Some of these cases may be classified or
involve highly sensitive information that will not be
resolved quickly.

Id., fourth page.  The documentation from the Dallas district

office of CIS indicates that the unaccomplished activity that has

been an impediment to further consideration of Nagem's

application is an FBI name check.  Id., second page.

By way of relief, plaintiff asks the court to render a

judgment that he is entitled to be naturalized as a United States

citizen, that the court administer the oath of naturalization to

him, and that he recover his reasonable attorneys' fees.

II.

The Motion to Remand

Contemporaneously with the filing of their answer to the

complaint on February 9, 2007, defendants filed a motion to

remand, asking the court "to remand this matter to []CIS, to

allow the agency to make the decision on Nagem's application,

once it has received the FBI background check on Nagem."  Mot. to

Remand at 2.  Defendants provide the court no indication in their

motion or supporting brief as to when the FBI might be expected

to conclude its background check on Nagem.  They suggest in their

motion that when the matter is remanded to CIS, if the court were

to grant the motion, the court give "instructions to decide

Nagem's application promptly after it receives the completed FBI

5

background check." Id. at 3.  The supporting brief states that Nagem's name was submitted by CIS to the FBI for a background check on September 30, 2004.

Accompanying the motion is the declaration of Michael A. Cannon ("Cannon"), who identifies himself as the Section Chief of the National Name Check Program Section at the headquarters of the Federal Bureau of Investigation in Washington, D.C.  Cannon provides a detailed explanation of the operation of the FBI name check program.  With respect to the FBI's inquiry into Nagem's background, Cannon said:

> The name check request for plaintiff Bassam Mohamed Nagem was submitted by USCIS to the FBI on September 30, 2004, and has not been completed.  The FBI is performing its check in response to USCIS's request in accordance with the procedures outlined above.  The results of the name check will be forwarded to USCIS in Washington, D.C., in due course, in accordance with the FBI's normal protocol.

Mot. to Remand, App. at 8.

Also accompanying the motion to remand is the declaration of Doreen Perez ("Perez"), who identifies herself as a Dallas Field Office Adjudications Officer with CIS.  The contents of the Perez declaration confirm Nagem's contention and the recitation in defendants' supporting brief that the FBI name check is the background check on Nagem that has prevented the processing of his application.  Br. at 3, ¶ 5.

In his reply to the motion to remand, Nagem calls the court's attention to a list that was provided by the Dallas district office of CIS on February 21, 2007, of cases in the Dallas office currently pending FBI name checks.  Nagem's

application is not on the list.  Nagem infers from that fact that

perhaps CIS already has received the results of his name check,

with the consequence that there might well be no reason why the

processing of his application cannot be concluded.  Nagem

acknowledges that the absence of his application from the list is

not conclusive, but, he goes on to argue, the fact that his

application is not listed "provides further support for his

request that []CIS be ordered to complete the case within a

specific time frame, or to provide specific information as to the

reason for any additional delay."  Reply at 4.

III.

Analysis

The statute on which Nagem relies, 8 U.S.C. § 1447(b), reads

as follows:

> If there is a failure to make a determination
> under section 1446 of this title before the end of the
> 120-day period after the date on which the examination
> is conducted under such section, the applicant may
> apply to the United States district court for the
> district in which the applicant resides for a hearing
> on the matter.  Such court has jurisdiction over the
> matter and may either determine the matter or remand
> the matter, with appropriate instructions, to the
> Service to determine the matter.

So far as the court can determine, no court of appeals has

rendered a decision as to the meaning of the term "examination"

as it is used in 8 U.S.C. § 1447(b).  A minority of the district

courts that have dealt with the issue have held that the term

"examination," as used in the statute, refers to the entire

investigatory process, not the single event of the interview the

CIS agent conducts of the applicant, and that, as a consequence,

7

the courts lack subject matter jurisdiction before the lapse of 120 days after the entire process has been completed.  See Danilov v. Aquirre, 370 F. Supp. 2d 441 (E.D. Va. 2005); Martinez v. Gonzales, __ F. Supp. 2d __, 2006 WL 3477985 (E.D. Va. Nov. 29, 2006); El Kassemi v. Dep't of Homeland Sec., 2006 WL 2938819 (D.N.J. Oct. 13, 2006); Damra v. Chertoff, 2006 WL 1786246 (N.D. Ohio June 23, 2006).  However, as defendants acknowledge, a majority of the district courts dealing with the issue have concluded that the term "examination" in the statute refers to the interview, and not to the entire investigative process.  See Aslam v. Gonzales, 2006 WL 3749905 (W.D. Wash. Dec. 19, 2006); Shalabi v. Gonzales, 2006 WL 3032413 (E.D. Mo. Oct. 23, 2006); Khelifa v. Chertoff, 433 F. Supp. 2d 836 (E.D. Mich. 2006); Daami v. Gonzales, 2006 WL 1457862 (D.N.J. May 22, 2006); Essa v. U.S. Citizenship and Immigration Servs., 2005 WL 3440827 (D. Minn. Dec. 14, 2005); El-Daour v. Chertoff, 417 F. Supp. 2d 679 (W.D. Pa. 2005).

     Defendants candidly admit that the majority view is the more logical and statutorily consistent argument and that, therefore, the court has subject matter jurisdiction because 120 days have passed since CIS interviewed Nagem.  The court agrees, and concludes that it has subject matter jurisdiction over this action.

     Nevertheless, defendants urge the court to reject Nagem's requests because the FBI name check has not been accomplished. They cite district court opinions stating that to conduct a

hearing without completion of the background check would contravene Congress's intent that an FBI background check is to be completed prior to adjudication of every naturalization application.  See Aslam, 2006 WL 3749905 at *2; Shalabi, 2006 WL 3032413 at *4; Essa, 2005 WL 3440827 at *2.  Defendants also call the court's attention to district court opinions stating that a district court is not equipped to conduct an investigation to determine if an applicant presents any risk to national security or public safety.  See Shalabi, 2006 WL 3032413 at *4; El-Daour, 417 F. Supp. 2d at 684.  In the course of explaining why it thought it could not process the plaintiff's application without a background check, the El-Daour court said:

> [W]hile I am confident that I have subject matter
> jurisdiction over El-Daour's application, I must remand
> the action to the CIS.  Section 1447(b) permits a court
> to "remand the matter, with appropriate instructions,
> to the Service to determine the matter."  Certainly, I
> sympathize with El-Daour's plight.  He "is
> understandably anxious to complete the naturalization
> process so he can fully enjoy the benefits of United
> States citizenship." Alkenani, 356 F. Supp. 2d at 657.
> Yet the very reason that the CIS did not process El-
> Daour's application within 120 days of his examination
> prevents me from deciding his application.  The FBI has
> not yet completed the criminal background check.  This
> is a vital piece of information.  A court is not
> equipped to conduct such an investigation.  I do not
> have the resources at my disposal to determine whether
> El-Daour presents a risk to national security or to
> public safety.
>
> Consequently, I must remand the action to the CIS
> for a prompt resolution once the background check has
> been completed.

El-Daour, 417 F. Supp. 2d at 683-84.

The one case cited by the parties in which the district court ultimately decided the application for naturalization is

Shalan v. Chertoff, 2006 WL 1308175 (D. Mass. May 9, 2006).  In
an earlier opinion in that case, the District of Massachusetts
found that it had subject matter jurisdiction.  Shalan v.
Chertoff, 2006 WL 42143 (D. Mass. Jan 6, 2006).  Defendants note
that in neither opinion is there any mention of Public Law 105-
119, the Congressional mandate that naturalization applications
must not be adjudicated until completion of the FBI background
check, and that in neither opinion does the court state whether
the FBI background check on Shalan had been completed in time for
the hearing.

     Other district court decisions to which defendants call the
court's attention emphasize the deference they believe the courts
should show to the approval process of CIS.  For example, in
Khelifa, a case in which the FBI background check had been
completed, the Eastern District of Michigan concluded that the
better course would be to allow CIS to make the decision on the
application, and that, if necessary, the court could later review
that decision, explaining:

> Yet, even with the benefit of a completed background
> investigation, this Court still would confront many of
> the concerns that the "ordinary remand" rule seeks to
> address.  It is one matter, after all, to review the
> results of Plaintiff's background check, but another
> matter entirely to interpret these results. . . .
> Plainly, CIS and the federal law enforcement agencies
> with which it works in the investigative process have a
> great deal more expertise than the Court in both (i)
> identifying the potentially problematic information
> that has been uncovered in a background check, and (ii)
> following up to determine whether this information
> truly reflects legitimate national security or public
> safety concerns, or instead is merely a "false
> positive."

Thus, while Plaintiff's background check is now complete, the Court still sees considerable benefit in allowing CIS to make the first assessment as to whether any information disclosed in this investigation has any bearing upon Plaintiff's eligibility for citizenship. First and foremost, CIS has the experience and expertise in making this assessment--and, more generally, in determining whether an applicant meets all of the various criteria for naturalization--while the Court has neither.  Next, any subsequent judicial review--a function that <u>does</u> lie within the Court's experience and expertise--would be considerably aided by an agency analysis and explanation as to why it acted as it did on Plaintiff's application.

<u>Khelifa</u>, 433 F. Supp. 2d at 843-44.

The only decisions of a district court within the Fifth Circuit the court has found dealing with § 1447(b) are three of the Southern District of Texas.  In one, the court granted a motion to remand, and ordered the Attorney General to direct the FBI to complete the required background check on the plaintiff within the next 120 days and deliver it to CIS, which was ordered thereafter to make a prompt determination of the plaintiff's application for naturalization.  <u>Qazi v. Gonzales</u>, 2007 WL 446040 (S.D. Tex. Feb. 6, 2007).  The court provided in the order of remand that the case would be administratively closed, but that should further review become necessary the plaintiff could notify the court and the action would be reinstated.  <u>Id.</u>  More recently, a judge in the Southern District of Texas remanded a § 1447(b) case to the CIS for further proceedings with instructions to the Department of Homeland Security to complete the investigation regarding the plaintiff's FBI and Interagency Border Inspection System checks as expeditiously as practicable and make a prompt determination on the plaintiff's application.

11

<u>Mechanic v. Dep't of Homeland Sec.</u>, 2007 WL 580780 (S.D. Tex. Feb. 20, 2007).  Again, the court administratively closed the case, but stated in the order that, if further review were to prove necessary, the plaintiff could reinstate the action.  <u>Id.</u> In the third Southern District case, <u>Eng v. Chertoff</u>, the court remanded the case with instructions to the Attorney General and CIS virtually identical to those contained in the <u>Qazi</u> order, and with an administrative closing of the case with the right of the plaintiff to cause it to be reinstated, the same as in <u>Qazi</u> and <u>Mechanic</u>.  2006 WL 2442894 (S.D. Tex. Aug. 21, 2006).

A different approach was taken by the United States District Court for the Western District of Washington in <u>Aslam v. Gonzales</u> in which, in response to the defendants' motion to remand, the court denied the motion, held the case in abeyance for 60 days while the FBI completed the plaintiff's name check, and ordered that the parties were to file a joint status report updating the court on the status of the plaintiff's application and name check by a specified date (approximately 60 days after the date of the court's decision).  2006 WL 3749905 (W.D. Wash. Dec. 19, 2006). Finally, the court ordered that, if the FBI name check is not completed by the specified date, the government must appear on the third day after the specified date to show cause why the plaintiff should not be immediately naturalized.  <u>Id.</u> at *2.

Another version exists in the decision of the District of Oregon in <u>Al-Kudsi v. Gonzales</u>, where the court ruled as follows:

> While this court recognizes that it has authority to
> determine this matter pursuant to 8 U.S.C. § 1447(b)

and naturalize Mr. Al-Kudsi, it is my determination
that this matter should be remanded to CIS, with
instructions, for determination of Al-Kudsi's pending
application.

It is therefore the ORDER of the court that Respondent
Alberto R. Gonzales instruct the F.B.I. to complete a
G-325 name check on the application of Bassem Fawwaz
Al-Kudsi within ninety days of the date of this
Opinion, and deliver it to the District Director of the
U.S. Citizenship and Immigration Services in Portland,
Oregon.

It is further ORDERED that if a completed G-325 name
check on the application of Bassem Fawwaz Al-Kudsi is
not received by the District Director of the U.S.
Citizenship and Immigration Services in Portland,
Oregon, within said ninety day period, the Respondent
District Director shall treat that failure as if he had
received a completed G-325 name check from the F.B.I.
containing no information that would lead to a denial
of the application and within a thirty day period
thereafter shall grant the application of Bassem Fawwaz
Al-Kudsi and forward a certificate of naturalization to
this court.

Upon receipt of the certificate of naturalization, this
court will administer the required oath of allegiance
during a regularly scheduled oath ceremony or, finding
that the delay in this case constitutes special
circumstances pursuant to 8 U.S.C. § 1448(c), will
administer the oath on an expedited basis upon request
of Mr. Al-Kudsi.

2006 WL 752556 at *3 (D. Or. Mar. 22, 2006).

Having concluded that the court should take an approach

similar to that of the Western District of Washington in Aslam,

the court is denying the motion to remand.  The governmental

agencies have had more than sufficient time to perform the

functions required of them for the processing of Nagem's

application.  The application has been pending approximately two-

and-a-half years.  Almost two years have elapsed since the

examination contemplated by § 1447(b).  Congress gave Nagem the

13

right to file this suit 120 days after the examination.  Nagem has been extremely patient by waiting, instead, 610 days after the examination before the filing of his suit.  Since the suit was filed, the governmental agencies have had another 107 days to perform their functions.  The governmental agencies still have not performed, and have failed to give the court or Nagem any assurance as to when they will perform.  This intolerable situation must be resolved rather promptly.

The court is sensitive to the importance of the background investigation of a naturalization applicant that the governmental agencies are charged to perform, and of the importance that the results of such an investigation be available to, and taken into account by, the deciding authority, whether it be CIS or the court.  However, the withholding of completion of such an investigation cannot serve to deny an applicant of his right to have his application determined within a reasonable period of time.  The rulings the court is making now have as their goals insuring that the deciding authority has full information before ruling on Nagem's application while at the same time causing the processing of the application to be concluded rather expeditiously.  Nagem's long wait must be brought to an end.

Therefore,

The court ORDERS that defendants' motion to remand be, and is hereby, denied.

The court further ORDERS that:

14

(1)   a hearing be held at 10:00 a.m. on May 3, 2007, in the Fourth Floor Courtroom of the United States Courthouse, Fort Worth, Texas, for consideration and determination of Nagem's application for naturalization;

(2)   Nagem, counsel for the government, counsel for Nagem, and the official or officials of defendants who would be responsible for evaluating and deciding Nagem's application for naturalization be present at such hearing;

(c)   the defendant or defendants responsible for completing the background check or checks on Nagem complete such background check or checks by April 20, 2007, and provide to the court by April 23, 2007, in the form of a document filed with the papers in this action accompanied by an appropriate cover document bearing the cause number and style of this action, a complete report on such background check or checks; and

(d)   by April 20, 2007, defendants provide to the court, by a document filed with the papers in this action accompanied by an appropriate cover page bearing the cause number and style of the action, whatever additional information the court might require in determining whether Nagem's application for naturalization should be granted.

SIGNED March 23, 2007.


_____/s/ John McBryde_____
JOHN McBRYDE
United States District Judge


15